## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ABDUL WAKIL AMIRI,

     Plaintiff,

        v.

CAPITAL RESTAURANTS CONCEPTS,
LTD.,

     Defendant.

Civil Action No.  03-606 (RJL)

## MEMORANDUM OPINION

Plaintiff has filed an amended complaint alleging that he was discharged from his employment by defendant based on his race, color, ancestry, and national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981. Plaintiff also alleges that he was subjected to a hostile work environment and that defendant retaliated against him for filing a discrimination claim with the Equal Employment Opportunity Commission ("EEOC").  The amended complaint also contains a common law claim for tortious interference with prospective business advantage and economic relationship.

Defendant has filed a motion for summary judgment.  Because the Court finds that the undisputed material facts establish that defendant had a legitimate, non-discriminatory reason for discharging plaintiff from his employment and that plaintiff has not provided sufficient evidence to support the hostile work environment and retaliation claims, summary judgment will be granted on the federal claims.  The common law claim will be dismissed without prejudice.



*Factual Background*

Plaintiff is a native of Afghanistan.  Amended Complaint ("Am. Compl."), ¶ 1. Defendant

operates J. Paul Restaurant, located at 3218 M Street, NW, Washington, DC. *Id.*  Plaintiff was

employed at the J. Paul Restaurant from March 28, 1998 to January 5, 2002. *Id.*, ¶ 6.  In 1998, a

Senior Executive Officer of defendant, Paul Cohn, met plaintiff working as a street vendor.

Defendant's Motion for Summary Judgment ("Def't's Mot."), Exhibit ("Ex."), Declaration of Paul

Cohn ("Cohn Decl."), ¶ 2.  As an act of charity, Mr. Cohn directed J. Paul Restaurant to create a

kitchen utility worker position for plaintiff so that plaintiff could afford basic living expenses. *Id.*,

¶¶ 2-3.  In that position, plaintiff's duties consisted of cleaning of storage areas and cutting up

boxes. *Id.*, ¶ 4.

Plaintiff claims that prior to September 11, 2001 the restaurant was a hospitable work

environment. Am. Compl., ¶ 6.  From that day and until his termination, plaintiff alleges that

defendant's officers and employees uttered racial and ethnic epithets at him, repeatedly harassed

him and referred to him as a "terrorist" or "Taliban."  Def't's Mot., Ex. 2, Deposition of Plaintiff

("Pl's Dep."), pp. 174, 223, 284-85, 307.  On the date of his termination, plaintiff alleges that one

of defendant's employees told him to leave and that he "doesn't want terrorists." Am. Compl.,

¶ 11.

In the Fall of 2001, J. Paul Restaurant suffered a significant decline in revenue.  Cohn

Decl., ¶ 6.  As a result, defendant instituted a policy stating that no employee was to work more

than 40 hours a week.  *Id.*   Plaintiff was repeatedly informed of this policy.  Def't's Mot., Ex. 10,

Declaration of Drew Jackman ("Jackman Decl."), ¶ 5.   Plaintiff repeatedly violated the policy by

refusing to work less than forty hours a week and disobeyed orders by his supervisors to clock out

early on days when business was slow at the restaurant. *Id.*, Ex. 11, Declaration of David Calkins ("Calkins Decl."), ¶¶ 4, 6; Ex. 13, Declaration of Lee Howard ("Howard Decl."), ¶¶ 4, 5.

On January 5, 2002, B.T. All, the restaurant's sous-chef, told plaintiff to leave work before the end of his shift. *Id.*, Ex. 15, Declaration of B.T. All ("All Decl."), ¶ 5. Plaintiff refused to comply with this order and told Mr. All that he did not have the authority to tell him to leave early. *Id.* Mr. All informed Lee Howard, the Assistant Manager, of these facts. Howard Decl., ¶ 6. Mr. Howard approached plaintiff that night and told him to clock out. *Id.* Plaintiff told Mr. Howard he did not have the authority to issue such an order. *Id.* In response, Mr. Howard instructed plaintiff not to return to work until he had spoken with Drew Jackman, the General Manager, on January 7, 2002. *Id.*

The next day, plaintiff attempted to clock-in for work prior to speaking to Mr. Jackman. *Id.*, ¶ 9. Mr. Howard told plaintiff to leave the restaurant. *Id.* On January 7, 2002, Mr. Jackman informed plaintiff that he was being terminated from his position due to insubordination. Jackman Decl., ¶ 6. On January 25, 2002, plaintiff alleges he filed a complaint with the EEOC. Am. Compl., ¶ 14. The EEOC sent plaintiff a right-to-sue letter on November 5, 2002. Compl., Attachment.

Plaintiff asserts that he applied for over 200 jobs in the Washington, DC area following his termination by defendant. Plaintiff's Opposition to Motion for Summary Judgment ("Pl's Opp."), Ex. 1, Pl's Decl., ¶ 12. He also claims that several prospective employees informed him that he was not hired, in part, because of a negative reference from David Calkins, General Manager of J. Paul's restaurant. *Id.*, ¶ 17. The Director of Human Resources at the Washington Monarch Hotel affirmed that Mr. Calkins' statement to her that plaintiff had been terminated for

insubordination contributed to her decision not to hire plaintiff as a room attendant. *Id.*, Ex. 11, Declaration of Isabelle Badoux ("Badoux Decl."), ¶ 7.

*Standard of Review*

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 (c). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).

In considering whether there is a triable issue of fact, the Court must draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *see also Washington Post Co. v. United States Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989). The party opposing a motion for summary judgment, however, "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The non-moving party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Moreover, "any factual assertions in the movant's affidavits will be accepted as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion." *Neal v. Kelly*, 963 F.2d 453,

456 (D.C. Cir.1992) (quoting *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982)). The mere existence of a factual dispute by itself, however, is not enough to bar summary judgment. The party opposing the motion must show that there is a genuine issue of *material* fact. *See Anderson*, 477 U.S. at 247-48. To be material, the fact must be capable of affecting the outcome of the litigation; to be genuine, the issue must be supported by admissible evidence sufficient for a reasonable trier of fact to find in favor of the nonmoving party. *Id.; see also Laningham v. United States Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

*Discussion*

### Discriminatory Discharge Claim

In order to prevail in a Title VII case or a discrimination claim under 42 U.S.C. § 1981, a plaintiff initially must establish a *prima facie* case of prohibited discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973); *Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004). If the plaintiff succeeds in establishing a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged action. *McDonnell Douglas*, 411 U.S. at 804. Once the defendant proffers a sufficient non-discriminatory reason, the burden shifts to the plaintiff to produce some evidence, either direct or circumstantial, to show that defendant's proffered reason is a pretext for discrimination. *Id.; Morgan v. Federal Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir.), *cert. denied*, 540 U.S. 881 (2003). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 147-49 (2000).

To establish a *prima facie* case of discrimination in the context of a termination from

employment, the plaintiff must establish that (1) he is a member of a protected class; (2) his job

performance was at or near the employer's legitimate expectations; (3) he was discharged; and (4)

the employer replaced plaintiff with an individual of equal or lesser ability who is outside his

protected class, or the position remained open after the termination. *Neuren v. Adduci, Mastriani,*

*Meeks & Schill,* 43 F.3d 1507, 1512 (D.C. Cir. 1995); *Johnson v. Digital Equipment Corp.,* 836

F.Supp. 14, 15-16 (D.D.C. 1994). The burden of establishing a *prima facie* case of employment

discrimination is "not onerous." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253

(1981).

The fact that plaintiff is from Afghanistan establishes his membership in a protected class

based on national origin. Plaintiff was discharged from his position and the position was not

filled after plaintiff's termination. Three prongs of the *prima facie* case have been established by

plaintiff. The evidence cited by plaintiff to support a finding that his work performance met

defendant's expectations is rather slight. One of the reasons for this is that plaintiff's position

was created personally for him and he was not held to the same level of standards and

expectations as other employees at the restaurant. *See* Jackman Decl., ¶ 2; Calkins Decl., ¶ 2.

In support of his argument that his work performance was satisfactory, plaintiff cites the

deposition testimony of defendant's Director of Human Resources. She stated that "I don't

believe that [plaintiff] ever received a formal written performance evaluation, but he did receive at

one point in his tenure a merit increase -- I mean a raise, a raise in his rate of pay." Pl's Opp., Ex.

4, Deposition of Natalie Juenger ("Juenger Decl."), p. 113. Although this statement is a slender

reed upon which to establish that plaintiff's work performance was satisfactory, in the absence of

negative performance evaluations and given the low burden plaintiff must meet, the Court finds

the evidence sufficient on this issue. Therefore, for the purpose of the disposition of this motion, the Court concludes plaintiff has established a *prima facie* case of discrimination.

To meet its burden of showing a legitimate reason for its employment decision, the defendant need only "proffer," not prove, a legitimate non-discriminatory reason for discharging the plaintiff. *McDonnell Douglas*, 411 U.S. at 802.   Defendant states that plaintiff was terminated for insubordination. Defendants cites instances where plaintiff refused to comply with orders by supervisors that he reduce his work hours and where plaintiff stated that he did not recognize his supervisors' authority. This behavior continued over a period of several months. Insubordination is a legitimate nondiscriminatory reason for terminating an employee. *Holbrook v. Reno*, 196 F.3d 255, 263-64 (D.C. Cir. 1999); *Richard v. Bell Atlantic Corp.*, 164 F.Supp. 2d 10, 22 (D.D.C. 2001); *Weiger v. Georgetown Univ.*, 120 F.Supp. 2d 1, 20 (D.D.C. 2000).

Since defendant has proffered a legitimate reason for the discharge decision, plaintiff must establish by a preponderance of the evidence that the proffered explanation is a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804.  In assessing whether an employer's stated reason is a pretext, the Court should consider whether a jury could infer discrimination from the combination of (1) plaintiff's *prima facie* case; (2) any evidence plaintiff presents to challenge the employer's proffered explanation; (3) independent evidence of discriminatory statements or conduct by the employer; and (4) any contrary evidence by the employer of a positive record of equal opportunity employment. *Aka v. Washington Hospital Center*, 156 F.3d 1284, 1289 (D.C.Cir. 1998). The issue is not one of the correctness or the desirability of the reason offered, but whether the employer honestly believes in the reason offered. *Fischbach v. D.C. Dep't of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996). Plaintiff must show that the reason offered is a

phony one.  *Id.*

Plaintiff alleges that the proffered reason for terminating him is a pretext for discrimination.   Plaintiff contends that defendant's failure to investigate his prior claims of discrimination demonstrate pretext.  As evidence for this allegation, plaintiff offers three letters he allegedly telefaxed to Mr. Cohn and Mr. Jackman on September 25, 2001, November 11, 2001, and January 6, 2002.  *See* Pl's Opp., Exs. 5-7.  However, plaintiff has only submitted proof of confirmation on the last letter, which was sent by plaintiff the day *after* he refused to leave the restaurant as ordered.  *See id.,* Ex. 8.  In addition, defendant's supervisors all assert that they never received any discrimination complaints from plaintiff.  *See* Cohn Decl., ¶ 10; Jackman Decl., ¶ 6; Calkins Decl., ¶ 8; Howard Decl., ¶ 12.   The Court finds, therefore, that plaintiff has failed to show that the reason offered by defendant for its discharge decision is pretextual.

### Hostile Work Environment Claim

To establish a *prima facie* hostile work environment claim, plaintiff must demonstrate that (1) he is a member of a protected class; (2) he was subject to unwelcome harassment; (3) the harassment occurred because of his race or national origin; (4) the harassment affected a term, condition or privilege of employment; and (5) defendant knew or should have known of the harassment and failed to take action.  *Lester v. Natsios*, 290 F.Supp. 2d 11, 22 (D.D.C. 2003).  For a workplace to be hostile under Title VII , the offensive conduct must permeate the workplace "with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81 (1998).

In order to determine if the workplace environment was sufficiently hostile for Title VII

purposes, the Court should consider (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening or merely offensive; and (4) whether the conduct reasonably interfered with plaintiff's work performance. *Faragher v. Boca Raton*, 524 U.S. 775, 787-88 (1998). There is no Title VII liability for the "ordinary tribulations of the workplace," such as sporadic use of abusive language, occasional teasing, and isolated incidents. *Id.* at 787; *Clark County School District v. Breeden*, 523 U.S. 268, 271 (2001).

Plaintiff alleges that following the events of September 11, 2001, employees at the restaurant subjected him to racial and ethnic epithets. According to plaintiff, employees referred to him as a "terrorist" or "Taliban" hundreds of times and the restaurant's chef asked plaintiff "why are your people terrorists." *See* Am. Compl., ¶¶ 8-9; Pl's Dep., pp. 174, 284-85. In his deposition, however, plaintiff admitted that he enjoyed the job at the restaurant and wanted to continue to be employed there. Plaintiff also conceded that despite this harassment he did not seek another job. *See id.*, pp. 191-92.

Plaintiff's hostile work environment claim fails for several reasons. First, plaintiff has produced no evidence that the conditions of his employment were materially altered due to the alleged harassment. In addition, plaintiff cannot show that the employer knew or reasonably should have known of the discriminatory conduct. Plaintiff admitted in his deposition that he initially did not complain about the employees' conduct because he was afraid of losing his job. *See* Pl's Dep., p. 277. Plaintiff contends he eventually sent written communications to supervisors at the restaurant, but the record is devoid of proof that these communications were in fact sent and received. Plaintiff's self-serving affidavit alone will not foreclose the granting of summary judgment or create a genuine issue of material fact. *Tolson v. James*, 315 F.Supp.2d

110, 116 (D.D.C. 2004); *Remedios Jose v. Hospital for Sick Children*, 130 F.Supp.2d 38, 43

(D.D.C. 2000).  The relevant employees unanimously stated that they were unaware of plaintiff's

complaints until after he was terminated.  *See* Cohn Decl., ¶ 10; Jackman Decl., ¶ 6; Calkins

Decl., ¶ 8; Howard Decl., ¶ 12.  In sum, plaintiff has provided insufficient proof that he was

subjected to a pervasive, severe and discriminatory hostile work environment.

<u>Retaliation Claim</u>

Plaintiff has also brought a retaliation claim, alleging that after he filed a complaint of

discrimination with the EEOC defendant retaliating against him by providing negative references

to prospective employees.   To establish a retaliation claim, plaintiff must show that (1) he

engaged in statutorily protected activity; (2) the employer took an adverse personnel action; and

(3) a causal connection existed between the two.  *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir.

1999)(quotations omitted).   It is well-established that filing an EEOC complaint is a protected

activity.  *See Holbrook*, 196 F.3d at 263; *Madan v. Chow*, -- F.Supp. 2d -- , 2005 WL 555414 at

*8 (D.D.C. March 2, 2005).   Providing a negative reference to a prospective employer is an

adverse personnel action that can lead to Title VII liability.  *Baker v. John Morrell & Co.*, 382

F.3d 816, 829 (8th Cir. 2004); *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1301 n. 15 (3rd Cir.

1997); *Hashimoto v. Dalton*, 118 F.3d 671, 674 (9th Cir. 1997).

A retaliation claim based on a negative job reference requires that plaintiff show (1)

disparaging comments were made by the employer; (2) to whom the statements were made; and

(3) plaintiff was denied employment as a result of the negative reference.  *Niedermeier v. Office of

Baucus*, 153 F.Supp. 2d 23, 31 (D.D.C. 2001).  To support his claim, plaintiff has provided an

affidavit from Isabelle Badoux, Director of Human Resources at the Washington Monarch Hotel.

Ms. Badoux states that plaintiff applied for a room attendant position at the hotel in late January, 2002. Badoux Decl.¶ 4.  On his application, plaintiff noted that he had been employed by J. Paul Restaurant. *Id.*, ¶ 5.  Ms. Badoux telephoned the restaurant and was informed by Mr. Calkins that plaintiff had been fired for insubordination. *Id.*, ¶ 6.  Ms. Badoux states that the negative reference "contributed" to her decision not to hire plaintiff. *Id.*, ¶ 7.

Plaintiff has established that he filed a complaint with the EEOC, that defendant provided a negative reference, and that plaintiff was not offered employment as a result.  However, plaintiff has not demonstrated a causal connection between his protected activity and the adverse personnel action.  Plaintiff has provided no proof of when he filed the EEO complaint or when defendant became aware of the complaint.[1]  He has not shown a temporal link between the filing of his discrimination complaint and defendant's negative reference to Ms. Badoux.  Since this connection is lacking, plaintiff's retaliation claim must fail.

<u>Tortious Interference Claim</u>

The Court having determined that summary judgment in favor of defendant on plaintiff's federal law claims is appropriate, the only remaining claim is one for tortious interference with prospective business advantage and economic relationship under District of Columbia law.  A United States District Court may exercise supplemental jurisdiction over claims that are "part of the same case or controversy" as a claim over which the court has original jurisdiction.  28 U.S.C. § 1367.  The court may decline to exercise such jurisdiction if, *inter alia,* it has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3); *see United Mine Workers*

---

[1] Defendant's employees state that they were notified of the EEOC complaint in the Spring or Summer 2002. *See* Calkins Decl., ¶ 9; Howard Decl., ¶ 13.

*v. Gibbs*, 383 U.S. 715, 726 (1966).

Title 28, United States Code, Section 1367(d) provides that the statute of limitations for any state law claim shall be tolled while the claim is pending in federal court and for a period of 30 days after it is dismissed unless state law provides for a longer tolling period. *See Neal v. District of Columbia*, 131 F.3d 172, 175 n.5 (D.C. Cir. 1997), *cert. denied*, 525 U.S. 812 (1998). Since plaintiff will not be time barred from pursuing his tort claim in the Superior Court of the District of Columbia, the Court will decline to exercise supplemental jurisdiction and will dismiss without prejudice plaintiff's tort claim.

*Conclusion*

The evidence presented by the parties shows that there are no genuine issues of material fact.   Plaintiff has failed to rebut defendant's articulated non-discriminatory reason for the decision to discharge plaintiff.  As such, plaintiff cannot establish a discrimination claim under either Title VII or 42 U.S.C. § 1981.  Plaintiff has also failed to show a hostile work environment or retaliation claim under Title VII.  Defendant's motion for summary judgment will be granted on the federal claims.  The Court will dismiss the state law claim without prejudice.  A separate Order accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

DATE:
8/28/05

-12-